J-S81026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERICA NICOLE LAMBERT | |
| Appellant | No. 162 MDA 2017 |

Appeal from the Judgment of Sentence imposed December 5, 2016
In the Court of Common Pleas of Lycoming County
Criminal Division at No: CP-41-CR-0001217-2014

BEFORE:  PANELLA, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:            **FILED FEBRUARY 06, 2018**

Appellant, Erica Nicole Lambert, appeals from the judgment of sentence the Court of Common Pleas of Lycoming County imposed on December 5, 2016.  Appellant challenges the sufficiency and weight of the evidence.  Upon review, we affirm.

Appellant was charged with two counts of hindering the apprehension[1] of Rashawn Williams by (1) transporting Williams in her vehicle from Pennsylvania to North Carolina on June 1, 2014 after Williams shot and killed Aaron Lowery outside of the Hookah Lounge in Williamsport, and (2) falsely

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 5105(a)(2).

reporting to the police on June 4, 2014 that Williams stole her car, and that the last contact Williams had with her was at 4:30 a.m. on June 1, 2014. On September 30, 2016, following a bench trial, the trial court found Appellant guilty on both counts. On December 5, 2016, the trial court sentenced Appellant to concurrent terms of six months to two years minus one day of imprisonment. Appellant filed timely post-sentence motions challenging the weight of the evidence, which the trial court denied, and thereafter filed a timely notice of appeal. On January 31, 2017, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal within twenty-one days. On May 25, 2017, Appellant filed an untimely Pa.R.A.P. 1925(b) statement. On July 14, 2017, the trial court filed a Pa.R.A.P. 1925(a) opinion.[2]

Appellant raises two issues in this appeal, challenging both the weight and the sufficiency of the evidence. We first address Appellant's weight of the evidence claim,[3] for which our standard of review is well settled:

---

[2] The Rules of Appellate Procedure require a remand in the event that an appellant fails to file a Rule 1925(b) statement. **See** Pa.R.A.P. 1925(c)(3). In this case, however, remand is unnecessary because Appellant ultimately filed a Rule 1925(b) statement and the trial court then issued its opinion. We remind counsel for Appellant that an appellant's brief is to include a copy of the Rule 1925(b) statement, Pa.R.A.P. 2111(11), as well as the order in question, Pa.R.A.P. 2111(2), and the opinion of the trial court, Pa.R.A.P. 2111(10).

[3] Appellant preserved her weight of the evidence claim by filing timely post-sentence motions. **See** Pa.R.Crim.P. 607(A)(3).

- 2 -

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.** Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (internal citations and quotation marks omitted) (emphasis in original).

The Crimes Code provides: "A person commits an offense if, with intent to hinder the apprehension . . . of another for crime . . . he (2) provides or aids in providing . . . transportation . . . or other means of avoiding apprehension or effecting escape; or . . . (5) provides false information to a law enforcement officer." 18 Pa.C.S.A. § 5105(a)(2), (5). The

Commonwealth must prove beyond a reasonable doubt that the other person committed a crime or was wanted in connection with a crime. ***Commonwealth v. Johnson***, 100 A.3d 207, 211 (Pa. Super. 2014). The Commonwealth must also establish that "the actor knew that the conduct charged against the aided person or which was liable to be charged against the aided person, would constitute a felony of the first or second degree." ***Id.***

The trial court rejected Appellant's weight of the evidence claim for the following reasons:

> The shooting occurred at the Hookah Lounge at approximately 2:36 a.m. on Sunday, June 1, 2014. Although [Appellant] claimed that she did not know Williams was involved in the shooting until Williams' sister, Kimyatta, told her either late on Sunday evening or early Monday morning, the evidence presented at trial showed that this was a lie, and [that Appellant] was aware that Williams was involved in the shooting before she left Williamsport.

> In her interview with Agent Kontz on June 4, 2014, [Appellant] stated that she heard something happened in the Hookah Lounge and heard it had something to do with somebody being shot. She also knew that Williams was at the Hookah Lounge[,] but she claimed that she didn't know if he was involved, so she called his sister, [Kimy]atta. She noted that she was concerned that she was involved with someone who was "mixed up in trouble like this."

> The evidence presented at trial shows that [Appellant] had several phone conversations and text messages with Williams and his sister between 3:00 a.m. and 4:08 a.m. Agent Kevin Stiles of the Williamsport Bureau of Police testified that the police obtained [Appellant]'s phone records. Those records showed that: Williams called [Appellant] at 3:52 a.m.[,] and the call lasted 2 minutes and 25 seconds; Williams called [Appellant] again at 3:57 a.m.[,] and the call lasted 2 minutes and 2 seconds; Lambert called [Appellant] at 4:08 a.m.[,] and the call lasted 45 seconds; and at 4:14 a.m.[,] Williams called [Appellant,] and the call lasted 2

minutes and 45 seconds. There were also phone calls between [Appellant] and Williams' sister between 3:10 a.m. and 3:36 a.m. as well as a text message from Williams' sister to [Appellant], which said, "Call me when you can."

[Appellant] admitted in her trial testimony that she and Williams left Williamsport between 4:30 and 5:00 a.m. Williams drove her gold car to her home[,] and they left "pretty much immediately." They weren't planning on leaving then, and [Appellant] left in such a hurry that she forgot her bag with her toiletries, cash and cell phone charger. [Appellant] drove the car from Williamsport to a Sheetz gas station in Selinsgrove. At 6:08 a.m.[,] while they were at the Sheetz [station, Appellant] called her friend Amelia Nance, who lived in Chambersburg, and asked her if she could borrow $100.00. [Appellant] made arrangements to meet [Nance] in Chambersburg at around 8:00 a.m. to get the $100.00. After [Appellant] spoke to [Nance], she shut her phone off because she didn't want anyone calling her and asking her "fifty million questions."

According to [Appellant], Williams said he had been jumped[,] but they did not discuss it during the road trip. Specifically, they had "no discussion whatsoever" about the incident. Yet, they drove from Williamsport to North Carolina without any reason, without any verifiable explanation and clearly in haste to avoid prosecution.

[Appellant] had numerous conversations with others, including Kimyatta. While she claims that she left because she was very scared for the safety of [Williams,] who claimed he had been jumped, she did not report the matter to the police[,] nor did she stop at the police station. Even though she had a child and other family members, she only told her mother that she was leaving. She left so quickly that she didn't take any money, her phone charger or her toiletries. She had numerous phone conversations with [Williams] both before and after the shooting and had telephone calls with Kimyatta before they even reached Selinsgrove. When they reached Selinsgrove at approximately 6:00 in the morning on June 1, 2014, she needed to call a friend for money.

One could infer from [Appellant]'s actions and comments that she was aware that Williams was involved in the shooting at the Hookah Lounge. If Williams got "jumped," there was no need

- 5 -

to immediately flee the state of Pennsylvania. [Appellant] and Williams simply needed to go to the police station and report the incident. Furthermore, why would [Appellant] think people would be asking her "fifty million questions" unless she knew about the shooting at the Hookah Lounge? One could also infer that, by borrowing cash from her friend and shutting off her phone, [Appellant] was trying to protect her and Williams' location from being discovered through electronic means such as credit card or debit card transactions or signals off of cell phone towers.

[Appellant] tried to explain away the phone records showing her contacts with Williams after the shooting and before they left Williamsport by claiming that she was angry with Williams and [that] they were bickering back and forth in their brief phone conversations. If [Appellant] was angry with Williams and told him not to call her[,] as she claimed in her interview with Agent Kontz, why did she: answer his calls; call him back; call his sister; and abruptly drive from Williamsport to North Carolina with him at 4:30 or 5:00 a.m.? Furthermore, it only takes a matter of seconds to tell someone to quit calling you, not two or three minutes.

[Appellant] took an Amtrak train from High Point, North Carolina to Philadelphia, Pennsylvania on June 3, 2014. The next day[,] she appeared at the Williamsport Bureau of Police headquarters to report her car stolen, even though she and Williams had driven it to High Point, North Carolina. She initially spoke to the Watch Commander, Sergeant Frederick Miller, but when he realized that the individual who allegedly stole the car was Williams, who was wanted for murder, he called Agent Kontz[, who] told Sergeant Miller that he and Lieutenant Arnold Duck were trying to find [Appellant].

[Appellant] tried to portray herself to Agent Kontz as a damsel in distress. She claimed that when everything hit the news[,] she was terrified she would be connected[,] and her family would disown her. She told Agent Kontz that the last time she talked to Williams was not long after 4:00 a.m. on Sunday, June 1, 2014. When asked where she was for the last three days, [Appellant] claimed she was at a friend's, but she refused [to] tell Agent Kontz her friend's name. She made it seem as if Williams had fled from the Hookah Lounge in her car immediately after the shooting or shortly thereafter[,] and she had not seen or heard

from him since then, when in fact she and Williams had driven to High Point, North Carolina together.

Not only did [Appellant]'s lies evidence her consciousness of guilt for hindering Williams' apprehension by transporting him to North Carolina, [but] her lies formed the basis of the second count of hindering apprehension which was based on her providing false information to the police.

Clearly, [Appellant] provided false information to Officer Miller and Agent Kontz with the intent to hinder the apprehension and prosecution of [Williams]. [Appellant] admitted that, before she returned to Williamsport, she knew [Williams] was wanted and allegedly involved in the shooting on June 1, 2014. The evidence established that the shooting occurred on June 1, 2014 at approximately 2:30 a.m. She admitted to driving Williams to North Carolina after leaving Williamsport at approximately 4:30 or 5:00 a.m. on Sunday, June 1, 2014. When she arrived in North Carolina, she went to [Williams]' sister Kimyatta's house. She was told by Kimyatta either late Sunday on June 1 or early Monday morning on June 2 that the shooting had occurred[,] and that [Williams] was allegedly involved.

Yet, she went to the Williamsport Bureau of Police on June 4, 2014 to file a report that her car had been stolen by Williams. She clearly knew her car was not stolen[,] because she drove [Williams] to North Carolina[,] and she knew that he had the vehicle.[1] When [Appellant] spoke to Agent Kontz, she was aware that there was a warrant for Williams' arrest[,] and the Williamsport police were interested in determining where he was. She knew she had driven Williams to High Point, North Carolina, but did not share that information with Agent Kontz or Lieutenant Duck.

> [1]Appellant was purchasing the vehicle through Brenner Car Credit, which had installed GPS on the vehicle. The Williamsport police discovered that the vehicle was in Danville[,] Virginia through the GPS. The vehicle was abandoned in Danville, Virginia. The license plate had been removed. Danville, Virginia is approximately three-quarters of a mile away from the North Carolina/Virginia state line.

In her trial testimony, she claimed that her car was stolen from Brentwood Street in High Point, North Carolina when Williams dropped her off at Kimyatta's house and did not return. If that were the case, though, she would have reported her car stolen to the police in High Point, North Carolina on Monday, June 2, 2014, or Tuesday, June 3, 2014[,] before she left North Carolina on the Amtrak train. [Appellant] didn't believe her car was stolen; rather, she was trying to keep the police from discovering the whereabouts of Williams and her role in his flight from Pennsylvania.

Furthermore, she lied to Agent Kontz when she told him that the last time she had spoken to [Williams] was 4:00 or 4:30 a.m. on June 1. She admitted that when they pulled up at his sister's house in the afternoon, Williams told her to grab her stuff[,] and he was going to park the car. She claims that she answered the question referring to the phone when in fact the question related to talking to him generally.

Pa.R.A.P. 1925 Opinion, 7/14/17, at 4-10.

Based on our review of the record, as aptly summarized by the trial court, we conclude that the trial court acted within its discretion in determining that Appellant's challenge to the weight of the evidence lacks merit.

In her second issue, Appellant challenges the sufficiency of the evidence underlying her convictions for hindering apprehension. This claim also lacks merit.

As our Supreme Court has explained:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the

- 8 -

verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (citations omitted). Under this standard, we review all circumstantial evidence in the light most favorable to the Commonwealth. ***See Commonwealth v. Fitzpatrick***, 159 A.3d 562, 567 (Pa. Super. 2017) (citations omitted).

Viewed in the light most favorable to the Commonwealth, the circumstantial evidence identified in pages 4-10 of the trial court's opinion establishes each element of hindering apprehension in both counts beyond a reasonable doubt. With regard to Section 5105(a)(2), the evidence demonstrates that Appellant transported Williams to North Carolina to help him escape arrest for the shooting at the Hookah Lounge on June 1, 2014. The evidence of record provides no other plausible explanation for Appellant's decision to embark on a 400-mile trip with Williams in the dead of night, mere hours after the shooting, without bothering to pack any necessities or even obtain cash before leaving town.

With regard to Section 5105(a)(5), the trial court properly determined, based on the evidence of record, that Appellant lied to Williamsport police on June 4, 2014 when she stated she last talked to Williams shortly after 4:00 a.m. on Sunday, June 1, 2014, and that she had been at an unidentified "friend's" house for the next few days. She implied falsely that Williams fled from the Hookah Lounge in her car on the morning of June 1, immediately after the shooting or shortly thereafter, and she had not seen or heard from

him since. In reality, she and Williams drove to North Carolina together on the morning of June 1. She and Williams spoke as late as the afternoon of June 1, upon their arrival at Williams' sister's house in High Point, North Carolina. She also lied to Williamsport police that Williams stole her car in North Carolina, even though she did not report the car stolen to High Point police during her three-day visit. For these reasons, we conclude that Appellant's challenge to the sufficiency of the evidence is devoid of substance.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/08/2018